UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS STILSON,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 4:24-CV-1529-DAR<br><br>JUDGE DAVID A. RUIZ<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>REPORT AND RECOMMENDATION |

### INTRODUCTION

Plaintiff Nicholas Stilson challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Sept. 9, 2024). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Mr. Stilson previously applied for DIB and on December 17, 2020, the administrative law judge found he was not disabled for the period from January 2019 to December 2020. (Tr. 138-49). He reapplied for DIB on April 12, 2022, alleging he became disabled on an amended date of January 1, 2021, due to fibromyalgia, bulging disks in the back, PTSD, depression, and anxiety. (*See* Tr. 108, 304). The claim was denied initially on June 15, 2022 (Tr. 197) and on reconsideration on October 14, 2022 (Tr. 202).

1

On December 2, 2022, Mr. Stilson requested a hearing before an ALJ. (Tr. 206). On May 18, 2023, Mr. Stilson (represented by counsel) and a vocational expert testified before the ALJ. (Tr. 103-34). On August 2, 2023, the ALJ again determined Mr. Stilson was not disabled. (Tr. 15-27). On July 18, 2024, the Appeals Council denied Mr. Stilson's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-4; *see* 20 C.F.R. § 404.984(b)(2)). Mr. Stilson timely filed this action on September 7, 2024. (ECF #1).

## FACTUAL BACKGROUND

### I. Personal and Vocational Evidence

Mr. Stilson was 37 years old on his alleged onset date and 39 years old at the hearing. (*See* Tr. 105). He has a limited education as defined in the Social Security regulations and past work experience as a short-order clerk and a fast-food cook. (Tr. 128). He has a date of last insured of December 31, 2021. (Tr. 87).

### II. Relevant Medical Evidence

Mr. Stilson is diagnosed with fibromyalgia (Tr. 699), lumbosacral spondylosis, lumbar intervertebral disc degeneration, lumbar radiculopathy, chronic bilateral lower-back pain, and obesity (*see* Tr. 863, 910). His lower-back pains began in 1999 after he was injured from being crushed between a steel rack and a pallet jack. (Tr. 863, 910). Mr. Stilson also has a history of depression, anxiety, and post-traumatic stress disorder. (Tr. 1063).

Mr. Stilson describes his lower-back pain as constant, with aching and throbbing as well as shooting and stabbing pains. (Tr. 736). He consistently rated his pain as either a nine or a ten out of ten. (*See, e.g., id.*). His pain radiates to both legs and causes numbness, tingling, and weakness in them. (*Id.*). Mr. Stilson's medical records detail his pain treatments dating back to at least 2019, when he received lumbar epidural injections that did not improve his conditions. (*See* Tr. 939,

937, 935). As of January 2021, Mr. Stilson was not taking any medications for his fibromyalgia and, though back surgery was recommended, it could not proceed until he lost weight and quit smoking. (Tr. 699; *but see* Tr. 120 (Mr. Stilson reports taking Lyrica for his fibromyalgia)). On March 4, 2022, Mr. Stilson began treatment with a pain-management center that similarly recommended weight loss and quitting smoking. (Tr. 735-36). His records indicate mostly over-the-counter pain relievers such as ibuprofen, Naprosyn, aspirin, and lidocaine. (*See, e.g.*, Tr. 719, 735). Mr. Stilson received spinal steroid injections on March 24, 2022. (Tr. 728-29).

Mr. Stilson has been prescribed multiple medications for his mental health, including Strattera, Abilifiy, Lexapro, Prazosin, and Trazodone.[1] (*See* Tr. 1063). He has tried but discontinued other medications as well. (*See* Tr. 1060). From January 2021 through the hearing before the ALJ, Mr. Stilson presented at telehealth therapy sessions every other week, the tone of which were steady with successes, such as volunteering or studying for his GED, and stressors, such as his prior social security application, dating, and family life. (*See* Tr. 1065, 1058, 1049, 1047, 1039, 1037, 1036, 1027, 1025, 1018, 1015, 1013, 1011, 1001-02, 1000, 999, 997, 989, 976, 974, 971, 969, 961, 959). Over that same time, he presented at monthly telehealth psychiatric

---

[1] Strattera is a brand name for atomoxetine, a selective norepinephrine reuptake inhibitor prescribed with other medications to treat impulsiveness and loss of focus. *See Atomoxetine*, *MedlinePlus*, http://medlineplus.gov/druginfo/meds/a603013.html (last accessed June 16, 2025). Abilify is a brand name for aripiprazole, an antipsychotic prescribed to treat depression and abnormal moods, among other conditions. *See Aripiprazole*, *MedlinePlus*, http://medlineplus.gov/druginfo/meds/a603012.html (last accessed June 16, 2025). Lexapro is a brand name for escitalopram, a selective serotonin reuptake inhibitor primarily prescribed to treat generalized anxiety disorders. *See Escitalopram*, *MedlinePlus*, http://medlineplus.gov/druginfo/meds/a603005.html (last accessed June 16, 2025). Prazosin is an alpha-blocker prescribed to treat high blood pressure. *See Prazosin*, *Medline Plus*, http://medlineplus.gov/druginfo/meds/a682245.html (last accessed June 16, 2025). Trazodone is a serotonin modulator prescribed to treat depression. *See Trazodone*, *MedlinePlus*, http://medlineplus.gov/druginfo/meds/a681038.html (last accessed June 16, 2025).

evaluations where his conditions ranged from mild to moderate and he showed usually no-to-minimal improvement but sometimes had a worsening of symptoms. (*See* Tr. 1058-63, 1051-55, 1040-46, 1028-34, 1018-24, 1004-10, 989-95, 982-87, 977-81, 961-67, 953-55). His medications remained largely the same, with a slight increase in Abilify for worsening nighttime anxiety. (*See id.*).

### III.  Relevant Opinion Evidence

On March 10, 2020, as part of his disability application, Mr. Stilson was psychologically evaluated by Dr. J. Joseph Konieczny, Ph.D. (Tr. 394-97). Dr. Konieczny diagnosed Mr. Stilson with major depressive disorder (recurrent, moderate, and with anxious distress) and post-traumatic stress disorder. (Tr. 396). During the interview, Mr. Stilson complained of back pain and recounted back problems since adolescence. (Tr. 395). Dr. Konieczny opined Mr. Stilson had "no obvious limitations" in his ability to understand, remember, and carry out instructions or to concentrate and persist in tasks. (*Id.*). Dr. Konieczny opined Mr. Stilson had diminished tolerance for frustration and diminished coping skills that affected his ability to respond appropriately to supervision or to work pressure. (*Id.*).

On June 7, 2022, state agency medical consultant Scott Bolz, M.D., evaluated Mr. Stilson as part of the initial evaluation of his disability application. (Tr. 176). Dr. Bolz adopted the residual functional capacity findings from Mr. Stilson's 2020 disability determination. (*Id.*). He opined Mr. Stilson is limited to light work; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can frequently balance; can occasionally stoop, kneel, crouch; can never crawl; can occasionally reach overhead bilaterally; and must avoid use of moving machinery, commercial driving and unprotected heights. (*Id.*; *see also* Tr. 144). On October 13,

2022, state agency medical consultant Abraham Mikalov, M.D., affirmed the findings on reconsideration. (Tr. 187-88).

On June 10, 2022, state agency psychological consultant Karla Delcour, Ph.D., evaluated Mr. Stilson as part of the initial evaluation of his disability application. (Tr. 176). Dr. Delcour adopted the residual functional capacity findings from Mr. Stilson's 2020 disability determination. (*Id.*). There, the ALJ found Mr. Stilson is limited to simple, routine, and repetitive tasks that can be performed at the specific vocational profile (SVP) of one or two; a work environment that is free of fast-paced production demands with only routine workplace changes; no more than occasional public contact, interaction with coworkers and supervisors; no more than superficial contact with others with no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others. (Tr. 144). On October 6, 2022, State agency psychological consultant Kristen Haskins, Psy.D., affirmed the findings on reconsideration. (Tr. 188).

## IV.     Relevant Testimonial Evidence

Mr. Stilson testified he cannot work because of his worsening chronic pain in his back and legs. (Tr. 112). His pain will also aggravate his anxiety. (*Id.*). He can stand for about six minutes and sit for about five to ten minutes before he must move or lie down to relieve pain. (Tr. 112, 114). He cannot climb stairs without numbness in his legs and uses a stair lift. (Tr. 112, 118-19). He takes Lyrica twice a day and applies lidocaine cream four times a day.[2] (Tr. 120). Beginning in

---

[2] Lyrica is a brand name for pregabalin, an anticonvulsant prescribed to treat neuropathic pain and fibromyalgia. *See Pregabalin*, *MedlinePlus*, http://medlineplus.gov/druginfo/meds/a605045.html (last accessed June 16, 2025).

5

2021, he used a TENS unit for two hours a day.³ (Tr. 119). Mr. Stilson also cannot bend over past a certain point and cannot touch his knees. (Tr. 113-14). He can lift about five pounds before his back issues are aggravated and can lift no more than ten pounds. (Tr. 114-15).

Mr. Stilson's daily activities vary with his symptoms. On bad pain days, his depression is worsened and he "shuts down" without motivation to do anything but lie down. (Tr. 116). On better days, he can do laundry and care for himself, but cannot do any "deep cleaning." (Tr. 117). He shops for groceries online and not in person because he gets anxious in crowds or tight spaces. (Tr. 125). He lives with his parents and, although they are disabled, they have a home health aide so their care does not fall entirely on him. (*See* Tr. 116). He cleans his room and his own dishes, but spends most of his days lying down in his room on his phone. (Tr. 116-17). Mr. Stilson has partial custody of his two children, ages 12 and 10, and has them every other week. (Tr. 117). His children are mostly independent, and he watches over them, cooks their dinner, and makes sure they care for themselves. (Tr. 118).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

---

³ A transcutaneous electrical nerve stimulation (TENS) unit delivers low-voltage electrical currents to nerves to relieve pain and is used to treat fibromyalgia, among other conditions. *See Transcutaneous Electrical Nerve Stimulation (TENS)*, *Cleveland Clinic*, http://my.clevelandclinic.org/health/treatments/15840-transcutaneous-electrical-nerve-stimulation-tens (last accessed June 16, 2025).

6

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?
2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's residual functional capacity and can claimant perform past relevant work?
5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

### THE ALJ'S DECISION

At Step One, the ALJ determined Mr. Stilson had not engaged in substantial gainful activity since January 1, 2021. (Tr. 89). At Step Two, the ALJ identified the following severe impairments:

> Degenerative disc disease of the lumbar, cervical, and thoracic spine with radiculopathy; morbid obesity; peripheral neuropathy; fibromyalgia; mild intellectual disorder; major depressive disorder, attention deficit hyperactivity disorder (ADHD), anxiety state, and bipolar disorder.

7

(Tr. 89). At Step Three, the ALJ found Mr. Stilson's impairments did not meet the requirements of, or were medically equivalent to, a listed impairment. (Tr. 90-91).

At Step Four, the ALJ determined Mr. Stilson's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs; he can frequently balance; the claimant can occasionally stoop, kneel, and crouch; he can never crawl; the claimant can occasionally reach overhead bilaterally; he must avoid the use of moving machinery, commercial driving, and unprotected heights; the claimant can perform simple, routine, and repetitive tasks that can be performed at the specific vocational profile (SVP) of one or two; the work environment must be free of fast-paced production demands and involve only routine workplace changes; no more than occasional public contact; no more than occasional interaction with coworkers and supervisors; and superficial contact with others, in that the claimant can do no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others.

(Tr. 91-92). This is the same RFC as the previous ALJ determined in 2020. (*Compare* Tr. 144 *with* Tr. 91-92). The ALJ then found Mr. Stilson could not perform his past relevant work as a short-order clerk or as a fast-food cook. (Tr. 96). At Step Five the ALJ found Mr. Stilson could perform other work in the national economy such as housekeeper, assembler, and inspector. (*See* Tr. 96-97). Thus, the ALJ concluded Mr. Stilson was not disabled. (Tr. 97).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial

8

evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Mr. Stilson argues the ALJ erred in evaluating his subjective statements of his symptoms as required by Social Security Ruling (SSR) 16-3p. (ECF #9 at PageID 1340). The Commissioner responds that substantial evidence supported the ALJ's determination that the record did not support as severe of symptoms as Mr. Stilson described. (ECF #11 at PageID 1358, 1360).

In evaluating the claimant's subjective reports of symptoms, SSR 16-3p provides that an ALJ must consider the claimant's complaints along with the objective medical evidence, treatment received, daily activities, and other evidence. 2017 WL 5180304, at *5-8 (Oct. 25, 2017). The ALJ also uses the factors outlined in 20 C.F.R. § 404.1529(c)(3) to evaluate the claimant's statements:

1. A claimant's daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;
6. Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and
7. Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ need not analyze all seven factors, only those germane to the alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005).

10

Mr. Stilson first argues the ALJ evaluated his statements using two boilerplate passages:

> More specifically, the ALJ states that "after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." The ALJ goes on to state that "as for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the records through the claimant's date last insured do not show any significant change in the claimant's function from the prior ALJ decision."

(ECF #9 at PageID 1341 (quoting Tr. 92 and Tr. 93)). While the two quoted statements have been criticized as boilerplate, they are problematic when used in lieu of substantive discussion of a claimant's subjective statements and not when used as an introduction. *See Cox v. Commissioner of Social Sec.*, 615 F.App'x 254, 260 (6th Cir. 2015). Mr. Stilson makes no argument as to how the two passages are problematic beyond the label. The ALJ used the passages to introduce the next five paragraphs of substantive analysis of medical and non-medical evidence of Mr. Stilson's symptoms. (Tr. 93-95). The two complained-of passages cannot have been in lieu of substantive discussion that follows in the immediately following text. Indeed Mr. Stilson discusses this analysis extensively and argues it is deficient. (*See* ECF #9 at PageID 1341-45). So while Mr. Stilson correctly identifies the two statements as boilerplate, there is no error because the ALJ used it to introduce the substantive analysis and—setting aside Mr. Stilson's arguments for now—did provide an explanation for the finding.

Next, Mr. Stilson argues his "compliance with medical recommendations should bolster his allegations, not detract from them" in response to the ALJ's comments that Mr. Stilson only received treatment from a primary-care physician. (ECF #9 at PageID 1342). Mr. Stilson then restates what his medical records document his symptoms to be. (*Id.*). But "a Plaintiff does not

11

demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ." *Zingale v. Kijakazi*, No. 1:20-cv-2197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022). This is because the ALJ is not required to accept a claimant's subjective complaints and may discount subjective testimony when the ALJ finds the complaints are inconsistent with objective medical and other evidence. *Jones*, 336 F.3d at 475-76. In reviewing an ALJ's evaluation of an individual's symptoms, the court is limited to evaluating whether the ALJ's explanations for discrediting an individual's testimony are reasonable and supported by substantial evidence in the record. *Id.* at 476.

The ALJ concluded Mr. Stilson "had a mostly limited and conservative treatment history for his physical health issues" because he was treated only by his primary-care physician and pain-management clinic. (*See* Tr. 95). "Treatment, other than medication, an individual receives or has received for relief from pain" is a regulatory factor. 20 C.F.R. § 404.1529(c)(3)(v). Mr. Stilson treats his pain through Lyrica, pain-relievers, and a TENS unit and is treated by his primary-care physician and a pain-management clinic. (Tr. 119-20, 719, 735-36). Although Mr. Stilson could not receive surgical treatment for his back pain until he lost weight and quit smoking, it is true that he has not yet received surgical treatment. It is entirely possible that Mr. Stilson's pain prohibits him from losing enough weight or quitting smoking in order to receive surgery. But, the ALJ's determination here is entitled to "great weight and deference" where substantial evidence supports it. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Because substantial evidence demonstrates that Mr. Stilson's treatment is limited to medication and a TENS unit, the court must defer to ALJ's findings that the treatment factor suggests Mr. Stilson's pain is not disabling.

Finally, Mr. Stilson argues the ALJ did not properly discuss his activities of daily living or the precipitating and aggravating factors for his pain. (ECF #9 at PageID 1343-44). He states he cannot sleep, clean much, or climb stairs, must use his TENS unit for hours each day, and cannot shop in person. (*Id.*). While the record confirms that Mr. Stilson faces demonstrable limitations from his constant pain, it bears repeating that "a Plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ." *Zingale*, 2022 WL 824148, at *8. And the court is limited to evaluating whether the ALJ's explanations for discrediting an individual's testimony are reasonable and supported by substantial evidence in the record. *Jones*, 336 F.3d at 476. Here, the ALJ considered Mr. Stilson's complaints of disrupted sleep due to pain and his assertion that depression and anxiety caused him to isolate socially, but determined that Mr. Stilson was nevertheless able to spend time with friends and family, date briefly, volunteer at an animal shelter, study for his GED online, and care for his children. (Tr. 92, 95). These activities are substantial evidence supporting the ALJ's conclusion that Mr. Stilson's pain is not disabling within the meaning of the Social Security Act.

As for precipitating and aggravating factors for Mr. Stilson's pain, the ALJ did not address these beyond mentioning in passing that Mr. Stilson reported having more flare ups of pain starting in May 2022. But Mr. Stilson had a date of last insured of December 31, 2021. (Tr. 87). "Evidence of a disability obtained after the expiration of insured status is generally of little probative value," *Strong v. Comm'r of Soc. Sec.*, 88 F.App'x 841, 845 (6th Cir. 2004), unless it illuminates the claimant's health *before* the insurance cutoff date. *See Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Because Mr. Stilson's flare-ups began after his

13

date of last insured, they are less relevant to assessing his statements about his condition before that date than the other SSR 16-3p factors the ALJ did analyze.

Because the ALJ did not err in using a template introduction when analyzing Mr. Stilson's subjective statements of his symptoms, analyzed those statements with multiple regulatory factors, and supported the analysis with substantial evidence, I recommend the District Court **AFFIRM** the Commissioner's decision.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: June 20, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge. Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl,* **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.,* **932 F.2d 505, 509 (6th Cir.**

1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).